**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**T. Lynn WHITE, Defendant-Appellant.**

**Nos. 85–5190, 85–5348.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 13, 1985.

Decided April 17, 1986.

Opinion on Denial of Rehearing
May 27, 1986.

Charles D. Susano, Jr., argued, Bernstein, Susano, Stair, Cohen, Knoxville, Tenn., for defendant-appellant.

John W. Gill, U.S. Atty., Knoxville, Tenn., Wm. Bradford Reynolds, Walter W. Barnett, Louise A. Lerner, argued, Civil Rights Div., Dept. of Justice, Washington, D.C., for United States.

Before LIVELY, Chief Judge, MERRITT and JONES, Circuit Judges.

MERRITT, Circuit Judge.

The defendant, T. Lynn White, appeals his conviction for conspiracy to violate the housing rights of a black family and for aiding and abetting others in interfering with those rights, pursuant to 18 U.S.C. §§ 241, 242 and 42 U.S.C. § 3631.[1] For the reasons set forth below, we affirm the District Court.

### I.

On January 17, 1985 White and a codefendant, Troy L. Castile, were convicted of

---

1. 18 U.S.C. § 241 (conspiracy against rights of citizens) provides in pertinent part:

    If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; * * *

They shall be fined not more than $10,000 or imprisoned not more than ten years, or both * * *.

18 U.S.C. § 2(a) (aiding and abetting) provides:

Whoever commits an offense against the United States or aids, abets, counsels, com-

conspiring and aiding and abetting each other and two others in the burning of a home under construction owned by Mr. and Mrs. Richard Woods. The Woods are black. They were constructing their house across the street from White's home in Knoxville, Tennessee. On February 22, 1985 the trial court sentenced White and Castile to four years imprisonment followed by three years probation on the conspiracy count, and a concurrent sentence of one year of imprisonment for aiding and abetting.

During the trial it developed that two other men—James Brown and Mack Shelton—were also involved in the house burning. Brown and Shelton both entered guilty pleas prior to trial and testified for the United States.

Brown testified extensively about his relationship to Castile and White. Brown explained that in January, 1982 Castile arranged to have his (Castile's) home burned in order to collect the insurance money. (Tr. 1–194) Castile subsequently decided to open a nightclub, called the International Showplace. Brown testified that on June 11, 1982, at an "opening night" party for the club, White told Castile that if the club was not a financial success he could "do what they did in January and burn the place." (Tr. 1–198)

Brown then explained that subsequently White asked Castile and Brown to help him because he had "a problem." White told them "I've got some niggers ... moving in right across the street from me, and I don't want that to happen." (Tr. 1–207) Castile told White "I think we can handle that for you. Take [Brown] out there and show him where the house is." (Tr. 1–208) Cas-

tile and Brown arranged to have Shelton, a convicted felon, undertake the "remodeling job" of the Woods' home. (Tr. 2–198) Shelton burned the home on the night of July 31-August 1 and it was "totally destroyed" in the blaze and accompanying explosion. (Tr. 1–212, 2–206) White was out of town, as planned, in order to establish an alibi. (Tr. 1–210, 2–201)

Brown also testified that on August 26, 1982 Castile unsuccessfully attempted to burn the International Showplace which was in very poor financial condition. While Brown and Castile were in Daytona Beach, again in order to establish an alibi, (Tr. 2–7) club employees noticed the suspicious circumstances [2] and notified the fire department. Brown testified that shortly thereafter Castile received an anonymous letter, threatening a disaster at the club. Brown thought Castile had written the phony letter; Castile apparently thought Brown had written it. Brown later discovered that White had written it because he "thought [they] might need a little help." (Tr. 2–18) On September 1, 1982 Mack Shelton finally did burn the International Showplace.

Brown also testified that he kited checks to White on several occasions during 1982, and that he observed White and Castile making out fraudulent American Express charges.

Subsequent investigation into the arson at the International Showplace resulted in discovery of the conspiracy to burn the Woods' home. The District Court permitted the United States to introduce this "other bad acts" evidence and to try White and Castile together.

Appellant raises several issues in this appeal. First, he maintains there was in-

---

mands, induces or procures its commission, is punishable as a principal.

42 U.S.C. § 3631 (interference with housing rights) provides in pertinent part:

Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—

(a) any person because of his race * * * and because he is or has been * * * purchasing, * * * occupying, or contracting or negotiating for the * * * purchase * * * or occupation of any dwelling * * *; or

(b) any person because he is or has been, or in order to intimidate such person * * * from—

(1) participating, without discrimination on account of race * * *, in any of the activities, * * * described in subsection (a) of this section;

shall be fined not more than $1,000, or imprisoned not more than one year, or both * *.

2. Brown testified that "our employees had walked in and found the gas on at the club, and candles lit, and they had called the police and fire department." (Tr. 2–8, 2–9)

sufficient evidence on which to convict. Additionally, he objects to the admission of the "other bad acts" evidence as prejudicial, and claims he was entitled to have his case severed from that of Castile, his codefendant. Last, White argues that several jury instructions were erroneous or otherwise flawed. We consider each of these arguments in turn.

## II.

■ White takes the position that there was insufficient evidence to sustain a conviction. We must sustain a conviction "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We consider both the evidence and any inferences "reasonably and justifiably drawn therefrom." *United States v. Conti,* 339 F.2d 10, 13 (6th Cir.1964). Following a careful review of the record, we do not see how Appellant can seriously pursue this issue. The testimony of Brown and Shelton implicated White in every stage of the conspiracy to burn the Woods' home.[3] And, as the government points out, other evidence corroborated their testimony. White's brother-in-law, Dr. Kirby, testified that White was concerned about "niggers" moving into the neighborhood. (Tr. 2–167) White told the builders, Mr. Chambers and his two sons, that they would be "lucky if it [the Woods' house] stands for two months" and, after the arson, said to one of the sons that "if that black son of a bitch [re]built ... across the street from me ... I'd burn it down." (Tr. 3–129, 3–124) The fire chief and insurance investigator testified as to facts giving rise to an inference of arson. (Tr. 2–190, 3–52 to 3–54) We find ample evidence to sustain a conviction.

White next argues that the "other bad acts" evidence should not have been admitted under Federal Rules of Evidence Rule 404(b), that the District Court should have issued a cautionary instruction to the jury regarding the other bad acts evidence, and that White was entitled to a severance from Castile.

■ The District Court determined that the bad acts evidence was admissible against both defendants. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The District Court admitted the evidence in order to permit the government to "set up the scene." (Tr. 1–5) White insists that the evidence relating to prior and subsequent arsons, and to the fraudulent financial dealings is completely irrelevant to the Woods' houseburning and should have been excluded. The government first argues that evidence of the fire at Castile's home in January, 1982 is directly relevant to White's general knowledge that Castile could and would engage in arson. We agree. Rule 404(b) expressly provides for proof of knowledge; this prior arson was clearly relevant in that it tended to show why White would go to Castile about his "problem" and how he expected Castile to handle it.

■ Similarly, we agree with the District Court and the government that the evidence of check kiting and phony American Express transactions was admissible. The evidence of these financial dealings goes to the question of motive. For example, White's willingness to submit phony American Express charges for Castile tends to explain why Castile would be asked and would—without pay—want to help White with his "problem."

---

**3.** White correctly points to several minor inconsistencies in Brown and Shelton's testimony. (Appellant's Brief, at 3–12.) However, the inconsistencies are insignificant. For example, Appellant makes much of the fact that Shelton gave a statement to the FBI on September 26, 1984, wherein he said "I called Troy." On September 28 Shelton testified before a grand jury and said "Troy called me." On the 26th Shelton said "After I lit the fire, I closed the garage door." On the 28th he said "When I had lit the fire, I had already pulled the garage door down." (Appellant's Brief, at 8.) These inconsistencies are simply too insignificant to cast doubt on Shelton's veracity.

■ There is a serious problem, however, with the evidence of events after the Woods' house burned. As for the subsequent attempt to burn the International Showplace and the successful arson there, we are inclined to agree with White that this evidence was irrelevant as to his guilt or innocence and should not have been admitted against him. Only by mounting inference upon inference upon inference can we understand a plausible relevancy argument. The government suggests that both the later unsuccessful arson attempt by Castile and the phony threat letter raise the inference that White, after the commission of his crime, knew Castile was in "the arson business"; this, in turn, suggests White knew it in *advance* of the failed attempt; and, this suggests White relied on this knowledge when, several months earlier, he went to Castile with his "problem." This chain of inferences is strained, to say the least.

Both the subsequent attempt and the arson at the International Showplace were admissible only against Castile. The District Court should have given a limiting instruction at the time this evidence was introduced.[4] However, this error does not require, as White urges, a new trial. Rule 52(a) of the Federal Rules of Criminal Procedure provides that:

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

■ In light of the strong independent evidence of White's guilt, we do not believe he was prejudiced by the improper admission of Castile's attempted arson and arson at the International Showplace subsequent to the burning of the Woods' home.

■ As for White's claim that he was entitled to a severance, we find no evidence that the trial judge, in whose discretion a decision to sever lies,[5] erred in refusing to grant White's motion. Except for the subsequent arson evidence discussed above, the evidence introduced at trial, we believe, was admissible against both defendants.

■ White's last assignment of error concerns the District Court's charge to the jury that the disposition of charges against Brown and Shelton (who pled guilty in exchange for their testimony) should not influence a verdict as to White's guilt or innocence. Specifically, the court charged:

Now, the case that's (sic) been disposed of as to the Defendants James Brown and Mack Shelton, they are no longer of concern to you, and you should not speculate as to the reason for disposition. This disposition should not control or influence your verdict with reference to the remaining Defendants, ...

White argues that since his theory of defense was that Shelton and Brown lied about his [White's] involvement in the Woods' fire in order to obtain a favorable plea agreement, and the court's charge "torpedoed" this theory, the instruction was erroneous and prejudicial. In support of this argument White cites *United States v. Mayer*, 556 F.2d 245 (5th Cir.1977). However, in *Mayer*, the District Court refused to allow the defendant to inquire into why certain witnesses had entered guilty pleas and agreed to testify. Appellant does not allege that he was restricted in developing his theory of defense before the jury. Indeed, White concedes that he "showed that the defendant Brown anticipated that he would have to serve ... '45 years' before he was eligible for parole if he was prosecuted on everything that the government knew about him." (Appellant's Brief, at 41) Therefore, *Mayer* is inapposite. A fair view of the instruction suggests the District Court merely wanted the jury to understand that it should infer

---

**4.** The District Court declined to give a cautionary instruction. However, the court instructed the jury that:

Now, evidence was also introduced of other acts supposedly exchanged as favors between Defendants Troy Castile and T. Lynn White. The jury is instructed that such evidence has been admitted for the sole purpose of showing purpose, motive, intent, or plan of the conspiracy charged in this case. Now, even if the jury accepts the credibility of such evidence, the jury may not assume that either Defendant, because of alleged prior acts, also committed the acts charged in this Indictment. This evidence may only be considered insofar as it bears on the Defendant's motive, intent, knowledge, or plan in the alleged conspiracy to burn the Woods' house.

(Tr. 7–10 to 7–11)

**5.** *United States v. Jackson,* 409 F.2d 8 (6th Cir. 1969).

neither guilt nor innocence from Brown and Shelton's guilty pleas. The instruction did not destroy White's theory of defense.

The judgment of the District Court is affirmed.

## ORDER DENYING PETITION FOR REHEARING

The defendant has filed a forceful petition to rehear attacking the Court's intellectual honesty in sustaining the conviction in the court below. The Court remains unconvinced that the conviction should be reversed.

In response to the defendant's insistence that Brown's testimony concerning Castile's prior arson is inadmissible, we would point out that the issue at trial was whether White sought Castile's help in burning his neighbor's house. White's knowledge of Castile's previous conduct gives rise to an inference that this knowledge prompted White to seek Castile's help which in turn supports a second inference that they joined together to cause the arson. Thus, White's knowledge of Castile's past gives rise to an inference, when combined with other evidence, that the two did in fact commit the crime. "Knowledge" under rule 404(b) may be of a fact that is part of a chain of inferences that tends to prove an element of the offense.

Similarly, the check kiting and American Express fraud tend to show that White and Castile owed each other favors which would lead them to cooperate with each other in the crime charged.

Fed.R.Crim.P. 52 admonishes the Courts of Appeals to sustain the judgment of the trial court in criminal cases unless a substantial error has been made which would affect the outcome of the criminal trial. Our review of the record, and reconsideration of the case upon petition to rehear, convinces us that no such serious error was committed which affected the outcome of the trial.

Accordingly, the petition to rehear is denied.