856 F.2d 197
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick Robert SCHMALFELDT (87-1449), Ronald Dwayne
Schmalfeldt (87-1450), Defendants-Appellants
 Nos. 87-1449, 87-1450.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1988.
 
 Before MERRITT, KRUPANSKY and BOGGS, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 In this direct criminal appeal, Frederick Schmalfeldt and Ronald Schmalfeldt appeal the District Court's judgment following jury convictions for conspiracy to manufacture cocaine in violation of 21 U.S.C. Sec. 846. Appellants were charged in a three-count indictment along with six other men: Ivan Tibbs, Luis Angarita-Garzon, Jorge Clavijo-Sanchez, Hector Rios, Fabio Henao-Buitrago, and Jaime Gaviria. All eight men were charged in Count 1 with conspiracy to manufacture cocaine in violation of 21 U.S.C. Sec. 846. Frederick Schmalfeldt and four codefendants (not including Ronald Schmalfeldt) were charged in Count 2 with the manufacture of cocaine in July 1986 in violation of 21 U.S.C. Sec. 841(a)(1). All eight men were charged in Count 3 with the manufacture of cocaine in July 1986 in violation of 21 U.S.C. Sec. 841(a)(1). After a five-week trial, Frederick and Ronald Schmalfeldt were found guilty of Count 1 and acquitted of the remaining charges against them. Defendant Ivan Tibbs was found guilty of Counts 1 and 2 and acquitted of Count 3. The other five defendants were convicted of all counts with which they were charged. Appellants urge reversal on four major grounds: error in refusing to grant a severance from prejudicial joinder, insufficiency of the evidence, error in refusing to limit the cross-examination of Frederick Schmalfeldt, and prejudicial comments made by the District Court in the presence of the jury. For the reasons that follow, the judgment of the District Court is affirmed.
 
 FACTS
 
 2
 The trial in this case lasted for five weeks, and the amount of testimony and evidence presented to the jury is far too great to detail here. Instead, we will briefly summarize the government's case and set forth in more detail only the facts directly relevant to issues on appeal.
 
 
 3
 In July 1986, the Drug Enforcement Administration's Grand Rapids, Michigan office received a phone call from Michael Reichert. Reichert informed the DEA that he knew of a large cocaine processing laboratory in rural Western Michigan, near Kalamazoo. The DEA was skeptical at first, but decided the lead was worth pursuing when Reichert allowed the DEA to tape a telephone conversation between him and a man named "Luis," in which the laboratory was discussed. The DEA decided to use Reichert as an informer.
 
 
 4
 Over the course of several days, the establishment of the processing laboratory took place. Reichert delivered chemicals to be used in processing cocaine to a farm owned by defendant Frederick Schmalfeldt; the chemicals were accepted by defendant Ivan Tibbs. Ronald Schmalfeldt lived at the farm; Frederick Schmalfeldt did not. The DEA maintained surveillance at the farm and observed various people coming and going, including both Schmalfeldts. Several times during the period of surveillance, persons at the farm took action which indicated they were worried that they might be under observation.
 
 
 5
 On Friday, July 25, Reichert and an undercover DEA agent met with Ivan Tibbs and Hector Rios at a McDonald's restaurant. Reichert had arranged to meet with Luis Angarita, but Rios showed up instead. Rios showed Reichert a secret compartment in Rios's car that contained cocaine, and sold Reichert the cocaine. This car was later found at the farm inside the barn, where the laboratory was located.
 
 
 6
 At the farm, Reichert observed Ronald Schmalfeldt setting up mixing containers and a drying light assembly inside the barn. Later, he testified to the presence on Sunday, July 27, of several of the defendants (including Frederick Schmalfeldt but not including Ronald Schmalfeldt) in the barn where the laboratory was being assembled. On Sunday night, the processing of cocaine was begun. Late on Sunday night, both Reichert and Frederick Schmalfeldt left the farm.
 
 
 7
 Early on Monday morning, police obtained a search warrant and entered the farm. They found the laboratory and more than 50 kilograms of cocaine in various forms. The Cadillac with the secret compartment was also found in the barn, as was a loaded pistol. Two of the defendants, Jorge Clavijo and Hector Rios, were apprehended running from the pole barn. Three defendants, Luis Angarita, Jaime Gaviria, and Fabio Henao, were found in a house trailer on the property. Also found in the trailer were a loaded pistol and two loaded machine guns, one with a silencer. Ivan Tibbs and Ronald Schmalfeldt were found in the farm house, where two loaded pistols were also found. Frederick Schmalfeldt was not at the farm and was thus not arrested in the raid. He turned himself in upon learning of a warrant for his arrest.
 
 
 8
 Reichert testified at trial that the conspiracy actually began in the spring of 1986. He testified that Frederick Schmalfeldt asked him if he could obtain chemicals to use in processing cocaine. A "test cook" was undertaken in June 1986 by Reichert, a friend, Ivan Tibbs, and three of the other defendants. This "cook" took place at a farm next door to Frederick Schmalfeldt's farm. (Ivan Tibbs lived at this farm with the Schmalfeldts' mother, who died in late June.) Although Frederick Schmalfeldt was not present at the "test cook," Reichert testified that he selected the site for the "cook" and was aware of it.
 
 DISCUSSION
 A. Severance
 
 9
 Rule 14 of the Federal Rules of Criminal Procedure provides that the court may grant a severance if the defendants are prejudiced by joinder. The granting or denial of a severance is within the sound discretion of the trial court. United States v. Goldfarb, 643 F.2d 422, 434 (6th Cir.), cert. denied, 454 U.S. 827 (1981). The appellants must make a strong showing of prejudice before a reversal will be granted. United States v. Bibby, 752 F.2d 1116, 1123 (6th Cir.1985), cert. denied, 475 U.S. 1010 (1986).
 
 
 10
 Appellants have two arguments in support of their severance claim. The first involves only Frederick Schmalfeldt; the latter involves both appellants.
 
 Tibbs' Offer to Testify
 
 11
 Appellant Frederick Schmalfeldt submitted to the District Court a sealed affidavit from defendant Ivan Tibbs declaring that although he was unwilling to testify in his own defense, he would be willing to testify in Frederick Schmalfeldt's defense, and his testimony would tend to exculpate Frederick Schmalfeldt. Frederick Schmalfeldt argues that it was an abuse of discretion for the District Court to deny the motion.
 
 
 12
 In order for anticipated exculpatory testimony of a codefendant to justify a separate trial, the defendant requesting severance must make a showing that the codefendant would not invoke his Fifth Amendment privilege against self-incrimination and that his testimony would be exculpatory. United States v. Whitley, 734 F.2d 1129, 1139 (6th Cir.1984); Goldfarb, 643 F.2d at 435. It is unclear to what degree testimony has to be exculpatory before a judge's decision not to sever becomes an abuse of discretion, but it is clear that the showing that testimony would be exculpatory requires something more than the bare statement that testimony will exculpate or tend to exculpate the defendant. Ivan Tibbs's declaration, which this Court has viewed in camera, does specify the nature of his proposed testimony. We need not decide, though, whether the testimony that Tibbs proposed would be exculpatory, because Frederick Schmalfeldt did not make a showing that Tibbs waived his Fifth Amendment rights. Even if Tibbs were tried first and a declaration of his guilt or innocence was made before Frederick Schmalfeldt's trial began, Tibbs would have Fifth Amendment concerns. Although his guilt or innocence on the federal charges would be fully adjudicated, any testimony Tibbs gave at Frederick Schmalfeldt's trial might be used against him by the State of Michigan. Thus, unless Tibbs explicitly waived his Fifth Amendment rights, Frederick Schmalfeldt could not show that Tibbs would testify at a separate trial. Therefore, appellant did not sustain his "heavy burden" on this issue, and we hold that the denial of Frederick Schmalfeldt's motion to sever on the grounds that one of his codefendants would exculpate him was not an abuse of discretion. See Whitley, 734 F.2d at 1139.
 
 The Rule 404(b) Evidence
 
 13
 As is often the situation when the DEA must rely on informants to make its case, the government's informant in this case was a man of less than stellar character. Michael Reichert's criminal history included the importation, use, and sale of controlled substances, forgery, manufacture and detonation of explosive devices, exchanging drugs for sex, tax fraud, assault, and laundering money. This history was before the jury.
 
 
 14
 Reichert also took part in some bad acts that were not known to the jury. During the time that he was acting as an informer for the DEA in this case, Reichert had withheld some cocaine for his own use. He was also, unbeknownst to the government, arranging to purchase a kilogram of cocaine from Luis Angorita.
 
 
 15
 The government gave the defendants notice of Reichert's acts when they were discovered, but they presented obvious problems. Although the information would be useful in impeaching Reichert's credibility as an informer and as a witness, the evidence would obviously be detrimental to Luis Angarita.
 
 
 16
 It might be admissible against Angarita under Fed.R.Evid. 404(b) as proof of intent, preparation, plan or knowledge, but it would not be admissible against the other defendants.
 
 
 17
 The problem created by this evidence was compounded by the existence of a separate conspiracy. The government charged some of the defendants (but neither of the appellants) with conspiracy to distribute cocaine in a separate indictment (the 86-105 conspiracy). Four of the overt acts charged in that conspiracy, but not in the instant conspiracy, were distributions of cocaine to Michael Reichert. Again, those distributions might be admissible as 404(b) evidence against the defendants who made the distributions, but they would not be admissible against the appellants.
 
 
 18
 Appellants argue that the denial of their severance motions prejudiced them because the District Court was forced to choose between (1) allowing the defendants to cross-examine Reichert on all of the above-described acts and thus possibly prejudicing Frederick and/or Ronald Schmalfeldt through the "spillover" effect of the 404(b) evidence on the jury; and (2) not allowing any of the 404(b) evidence to come in, thereby eliminating the possibility that the jury might attribute some of the "other bad acts" to defendants who were not responsible for those acts, but also curtailing the defendants' right to cross-examine and impeach Reichert.
 
 
 19
 The District Court decided that the case should not be severed despite the possibility of some prejudice because of the competing interests of speedy trial, efficient use of judicial resources, the right to cross-examine witnesses, and the nature of the conspiracy charged--the operation of a cocaine laboratory that was large enough that several people were required to manufacture cocaine. The District Court therefore decided not to sever and to allow the 404(b) evidence to be used.
 
 
 20
 The appellants argue that this decision substantially prejudiced them, but it is difficult to see the prejudice. The 404(b) evidence that was actually admitted that the appellants complain of was evidence concerning the so-called "McDonald's meeting" between Reichert, Rios, and Tibbs. When the way in which this evidence was used is examined, it becomes clear that the appellants have failed to show that they were prejudiced in any way by the failure to sever and the subsequent admission of the evidence.
 
 
 21
 At the "McDonald's meeting," Tibbs left the car while Rios showed the secret compartment to Reichert and gave him the cocaine that was in the compartment. At trial, however, Reichert was not allowed to testify about the cocaine. He merely testified that he met with Rios and that Rios showed him the secret compartment in the Cadillac. The Court also admitted evidence of the telephone call arranging the meeting between Angarita and Reichert and a note found on the person of Rios indicating the time and place of the meeting.
 
 
 22
 Appellants argue that because the distribution of cocaine that took place at the "McDonald's meeting" was not charged as part of the instant conspiracy, but was in fact part of the 86-105 conspiracy, they were prejudiced by the admission of any evidence concerning the meeting. However, the evidence was probative for purposes of the instant conspiracy as well. The government introduced the evidence to show a Rios-Angarita connection (because Reichert had arranged the meeting with Angarita, yet Rios showed up) and because the Cadillac with the secret compartment was the same Cadillac found in the barn when it was raided by police. The District Court did not abuse its discretion by admitting the evidence.
 
 
 23
 Appellants also object to the Court's failure to give a cautionary instruction with respect to the "McDonald's meeting." The government argues that this issue was not preserved for appeal. Indeed, counsel for Frederick Schmalfeldt requested an instruction, but withdrew the request after a sidebar conference that was not transcribed. Tr. 1442-43. Counsel argues in his brief that he withdrew his request only when the Court told him that further effort by counsel directed toward the 404(b) evidence would result in all of that evidence being admitted. Counsel indicated in his brief that he was attempting to correct the record pursuant to Fed.R.App.P. 10(e); however, apparently no correction has been made. Thus, it appears that the issue has not been preserved for appeal. Even if the objection to the lack of a cautionary instruction has been preserved, however, we hold that any error in refusing to issue a specific cautionary instruction was harmless.
 
 B. Sufficiency of the Evidence
 
 24
 The applicable standard of review for a challenge to the sufficiency of the evidence is that a verdict will be sustained if, taking the view of the evidence most favorable to the government, there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. White, 788 F.2d 390, 393 (6th Cir.1986). Appellants base their argument that the evidence was not sufficient to sustain their convictions on four separate factors.
 
 
 25
 First, appellants argue that the jury's verdicts were inconsistent--that the jury could not consistently convict appellants of the conspiracy count while acquitting them of the substantive counts. This argument is based on appellants' assertion that the jury's acquittal of the Schmalfeldts on the substantive counts constituted a rejection of Michael Reichert's testimony in its entirety. Without that testimony, the appellants argue, there was insufficient evidence to convict them.
 
 
 26
 The argument that the jury's verdicts were inconsistent has no merit. Even though the jury found that the government had not proved beyond a reasonable doubt that either of the Schmalfeldts had participated in the two overt acts of the conspiracy that were also charged as separate substantive offenses, there was ample evidence from which the jury could conclude that the appellants were members of the manufacturing conspiracy. The jury did not have to find that the appellants themselves engaged in any of the overt acts charged in the indictment; it only had to find that they were a part of the conspiracy. See United States v. Kirk, 584 F.2d 773 (6th Cir.), cert. denied, 439 U.S. 1048 (1978). Even if most of that evidence came from the testimony of Michael Reichert, we do not assess the credibility of witnesses in assessing a sufficiency of the evidence claim. United States v. Adamo, 742 F.2d 927, 937 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985) (distinguishing between attack on quality of evidence and sufficiency of evidence). Taking a view of the evidence that draws reasonable and justifiable inferences in favor of the government, we hold that the evidence in this case is sufficient to sustain appellants' convictions. See White, 788 F.2d at 393.
 
 C. Refusal to Limit Cross-Examination
 
 27
 Appellant Frederick Schmalfeldt asserts as an independent ground for reversal the District Court's denial of his motion to limit cross-examination if he testified in his own behalf. Frederick Schmalfeldt was apparently concerned that the government would attempt to use evidence of other bad acts to impeach his credibility, and feared that assertion of his Fifth Amendment rights as to those bad acts would unduly prejudice his defense. The District Court denied the motion without prejudice, noting that although Frederick Schmalfeldt's taking the stand would not be a waiver of his Fifth Amendment rights as to questions concerning his credibility, the government should not be prohibited from asking questions that would be probative of his truthfulness. Additionally, the Court noted that it would be difficult to determine the effect of the evidence Frederick Schmalfeldt wished excluded in advance of his testimony. The Court stated, "I can rule on it again when and if the defendant testifies, and it may well be that the Court would in part or in total grant the motion at that time." Tr. 2763-65.
 
 
 28
 Frederick Schmalfeldt did not testify, and therefore the motion was not renewed. Appellant argues that the District Judge's ruling prevented him from testifying. There is no indication in the record that this ruling is the only reason, or even necessarily the major reason, Frederick Schmalfeldt did not testify. We can find no error in the District Judge's cautious approach of denying the motion but allowing the defendant to renew the motion when the issues were more clearly defined. And as the Supreme Court has noted, "[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." Luce v. United States, 469 U.S. 38, 41 (1984). The District Judge felt that he could not balance the probative value of the evidence appellant sought to exclude against the prejudicial effect on the defendant until he heard appellant's testimony. Because Frederick Schmalfeldt never testified, any possible harm from the Court's ruling, made without prejudice, allowing him to be impeached with 404(b) evidence, is wholly speculative. See id. at 41.
 
 D. District Judge's Comments
 
 29
 At one point in the trial, a question arose over the accuracy of a grand jury transcript used by the defendants to impeach one of the government's witnesses. The possibility of calling the court reporter to testify regarding the accuracy of the transcript was discussed. The District Judge made a statement to the effect that he was not sure if calling the reporter would do any good, because a court reporter would be likely to testify that he or she was sure that every word was correctly transcribed. Counsel for the appellants moved for a mistrial. The District Judge denied the motion, but did caution the jury that a certified transcript is a prima facie correct statement of testimony and that the Court did not mean to speculate on the credibility of any witness or future witness. The court reporter was never called to testify.
 
 
 30
 Appellants argue that the Judge's comments so usurped the jury's role as factfinder that they were reversible error. However, we find it difficult to say that the Court's comment was impermissible even in the absence of a cautionary instruction; with the added safeguard of a cautionary instruction, the Court erased any possible prejudice on the issue. The cases appellants rely on to support their argument involve comments of a much more prejudicial nature than the comment in this case. See, e.g., United States v. Yates, 553 F.2d 518, 520 n. 1 (6th Cir.1977) (trial judge commented that it was clear the defendant had admitted participation in a bank robbery); United States v. Kemp, 504 F.2d 421, 422-23 (6th Cir.1974) (trial judge commented that he did not believe a witness's testimony). In the instant case, the substance of the District Judge's comment was simply that a court reporter is likely to think he or she is accurate. This comment, especially with the cautionary instruction given, was not prejudicial.
 
 CONCLUSION
 
 31
 We have reviewed all of the appellants' claims of error and find them to be without merit. Therefore, the convictions of the appellants are AFFIRMED.