895 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald S. PARDUE, Defendant-Appellant.
 No. 89-5025.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1990.
 
 1
 M.D.Tenn.
 
 
 2
 AFFIRMED.
 
 
 3
 On Appeal from the United States District Court for the Middle District of Tennessee, Higgins, D.J.
 
 
 4
 BEFORE DAVID A. NELSON and BOGGS, Circuit Judges, and HENRY R. WILHOIT, Jr., District Judge.*
 
 
 5
 HENRY R. WILHOIT, Jr., District Judge.
 
 
 6
 Ronald Pardue was convicted at a bench trial, pursuant to 18 U.S.C. Sec. 371, for conspiracy to conduct an illegal gambling operation. He now appeals, arguing that the conviction was predicated on evidence gathered under a faulty search warrant and that essential elements of the offense were not proven beyond a reasonable doubt. Because we find no error on the part of the district court we now affirm Mr. Pardue's conviction.
 
 
 7
 * On June 13 and 14, 1985, respectively, searches were conducted on premises at 1211 Brick Church Pike, Nashville, Tennessee and 162 Caudill Drive, Hendersonville, Tennessee. In the course of these searches, IRS agents seized certain evidence and, without arrest warrants, detained individuals to obtain information which led to the arrest and indictment of six co-defendants for conducting gambling operations without a wagering stamp. The evidence obtained in these searches was suppressed because the searches were found to be in violation of the Fourth Amendment to the United States Constitution.
 
 
 8
 Present at the illegal Brick Church Pike search was an unidentified Metro Nashville police officer who mentioned to the IRS agents that a numbers operation was being conducted at a building on County Hospital Road. The building in question was then placed under surveillance by four officers for two days, June 17 and 18, 1985. During that period of time, the officers observed approximately twenty-five people arriving at the building to drop off envelopes. One of the officers, Agent Doble, followed an individual carrying two large suitcases to Mr. Pardue's residence. Agent Doble also observed folding chairs and "what appeared to be a new safe" being delivered to the target premises. However, when the search was conducted three weeks later no safe was found. Agent Doble also searched the Treasury records and found no record that any wagering stamp had been issued for 1497 County Hospital Road.
 
 
 9
 Prior to obtaining a search warrant, Agent Doble conducted another "brief surveillance" of the building and observed conduct consistent with what he had seen earlier. He also noted the presence of a vehicle registered to an individual who was found on the premises when the earlier search on Brick Church Pike was conducted.
 
 
 10
 The above information was submitted in the form of an affidavit by Agent Doble in which he concluded that "in affiant's experience and in the experience of other Treasury agents," the conduct observed was "entirely consistent with the conclusion that a numbers bank is being operated at the location." A search warrant was issued on July 3, 1985 and a search was conducted the same day.
 
 
 11
 When the search warrant was executed, four or five people were found on the premises and the following items were seized: approximately $20,000 in cash, office equipment, betting slips, a chalkboard with lists of names, and other records. From this evidence, Agent Doble concluded that a numbers operation was being conducted and that over $120,000 in wagers had been processed during a short period of time, two weeks, and more than $2000 in wagers was made in one day. Two of the persons present when the warrant was executed, Tommy Schroeder and Russell Freeman, both admitted they had been employed by Mr. Pardue to work in the numbers bank.
 
 
 12
 Based on the above evidence, Mr. Pardue was convicted of conspiracy to conduct an illegal gambling operation which would violate 18 U.S.C. Sec. 1955. Defendant received a sentence of eighteen months, suspended except for five months and twenty-nine days. A ten thousand dollar fine was imposed as a special condition of probation.
 
 II
 
 13
 Appellant argues that the district court erred in failing to suppress the evidence seized during the July 3, 1985 search of the premises on County Hospital Road.
 
 
 14
 * The Totality of the Circumstances
 
 
 15
 As his first ground for challenging the validity of the search, appellant contends that in determining the totality of circumstances, the Magistrate relied substantially upon conclusions of a law enforcement officer and that there was no substantial factual basis that probable cause existed.
 
 
 16
 When reviewing an application for a search warrant, the Magistrate is charged with the responsibility of making an independent determination of whether probable cause exists based on the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213 (1983). This "totality of the circumstances" test has been stated in the following manner:
 
 
 17
 The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
 
 
 18
 Id. at 238.
 
 
 19
 A proper decision cannot be rendered unless the "affidavit ... provide[s] the magistrate with a substantial basis for determining the existence of probable cause...." Id. at 239. "[M]ere conclusory statements" by the affiant are insufficient and the magistrate's decision "cannot be a mere ratification of the bare conclusions of others." Id.
 
 
 20
 In the present case appellant contends that the affidavit presented to the magistrate and the magistrate's resulting decision fail to meet the requirements of this test. He argues that the affidavit contained unsubstantiated conclusions which the magistrate merely ratified. Specifically, appellant contends that the statement by the unidentified police officer is taken at face value with no facts to support its reliability and that the affidavit places too much emphasis on the IRS agents' conclusions based on their experience in investigating illegal gambling.
 
 
 21
 It is true that the statement by the unidentified police officer, standing alone, would be insufficient to establish probable cause. However, the affidavit is not limited to that one statement. The agents' subsequent surveillance of the building, which is detailed in the affidavit, substantially corroborates the initial statement by the police officer.
 
 
 22
 A similar fact situation occurred in Gates. In that case, an anonymous writer sent a letter to the police alleging that the defendants were committing certain crimes and would be committing further crimes in the future. The police had no way of testing or establishing the basis for the writer's knowledge or the writer's credibility. Nonetheless, based on subsequent police surveillance and investigation which corroborated the writer's prediction of the defendants' activities, probable cause was found to exist.
 
 
 23
 The statement of the unidentified police officer, in the present case, was a much stronger tip than the anonymous letter in Gates. We must agree with the district court's statement in its order denying appellant's motion to suppress that "[i]f there was probable cause in Gates, it certainly existed here." J.App. at 22.
 
 
 24
 Appellant's assertion that the statements of the affiant were conclusory and unsupported must also be rejected. The affiant, an IRS agent with 13 years experience at the time, did include some conclusory statements but only after detailing the factual basis for his conclusions. Neither Gates nor any other case cited by appellant forbids the inclusion of conclusory statements in affidavits. What is forbidden is a finding of probable cause based on an affidavit that contains nothing but conclusory statements. Id. The factual contents of the affidavit clearly provided "sufficient information ... to the magistrate to allow that official to determine probable cause...." Id. at 239.
 
 B
 Description of the Property
 
 25
 The Fourth Amendment provides that warrants shall not issue "but upon probable cause ... particularly describing the place to be searched...."
 
 
 26
 The search warrant and affidavit refer to a building located at 1497B County Hospital Road. Appellant claims that no such address exists and that the building that was searched is located at 1495 County Hospital Road. Because of this error, he contends that the property was not "particularly described" and that the warrant and subsequent search were, therefore, invalid.
 
 
 27
 Appellant admits that no numbers were affixed to the exterior of the building but did introduce into evidence at the suppression hearing a copy of a deed to the premises, tax records and insurance policies identifying it as 1495 County Hospital Road. However, receipts from the Nashville Electric Company list the address as 1497 and a telephone number listed under Mr. Pardue's name in the 1985 Nashville Suburban Directory showed the address to be 1497. Agent Doble testified that the designation "B" was obtained from the electric company which had two meters installed at the building and were referred to as "A" and "B".
 
 
 28
 Regardless of whether the building's true address was 1495 or 1497B, the affidavit and warrant included a physical description of the building and its location. It was described in the warrant as "a block building just past the railroad tracks on the right going from Clarksville Highway toward the landfill. 1497B is the rear section of the building, the front section being a market type business."
 
 
 29
 The standard of review in this Court in determining whether a search warrant describes the place to be searched with sufficient particularity is a de novo review. U.S. v. Gahagan, 865 F.2d 1490 (6th Cir.1989). The test for determining the sufficiency of a description contained in a search warrant is two-pronged: first, "whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and [second] whether there is a reasonable probability that some other premises may be mistakenly searched." Id. at 1497.
 
 
 30
 Applying this test to the present facts, we conclude that the search warrant contained a description sufficiently particularized to withstand constitutional scrutiny.
 
 
 31
 As to the first prong, the IRS agents relied on the unidentified police officer's description of the building when they began their surveillance and had no problem in locating and identifying the building. That description was substantially the same as the description contained in the search warrant. If anything, the description contained in the search warrant was more complete and particularized. Further, the warrant indicates that a photograph of the building was attached to the warrant.
 
 
 32
 As to the second prong, there has been no allegation that the description could have applied to any other building in the area or that some other building could have been mistaken for the intended building.
 
 C
 
 33
 "Erroneous" Statements by Affiant
 
 
 34
 Appellant's next basis for challenging the validity of the warrant has to do with alleged erroneous or misleading information contained in the supporting affidavit. This argument is without merit.
 
 
 35
 In his brief, appellant lists sixteen "erroneous or misleading" statements contained in the supporting affidavit. Appellant admits that when these "errors" are considered individually they would not affect the validity of the affidavit but argues that when considered cumulatively they render the affidavit unreliable.
 
 
 36
 We first address the issue of whether these statements are "erroneous or misleading." A review of the record shows that this question has not been previously considered. There have been no findings of fact entered by the lower court that these statements are indeed "erroneous" and we are unable to determined from the record whether they are. Our review is limited to the contents of the record, See, Sones-Morgan v. Hertz Corp., 725 F.2d 1070 (6th Cir.1984), and we do not sit as fact finders. Minnesota Min. and Mfg. Co. v. Blume, 684 F.2d 1166 (6th Cir.1982) cert. den. 460 U.S. 1047 (1983) and 461 U.S. 939 (1983). Therefore, we cannot accept appellant's assertion that these statements are "erroneous."
 
 
 37
 However, even if these statements are assumed arguendo to be erroneous, we do not see their significance. Of the 16 challenged statements, six relate to the dispute over the building's address and five more relate to the building's physical description. The issue of the building's address was thoroughly discussed in section II-B supra, and it was determined that it makes no difference whether 1495 or 1497 was the correct address.
 
 
 38
 The challenged statements that refer to the building's physical description are inconsequential when considered individually or corporately. Appellant asserts that a portion of the market and an office were located at the rear of the building while the warrant states that "1497B is the rear section of the building, the front section being a market type business." The warrant is sufficiently clear that the market was not the subject of the search warrant, Gahagan, supra, and there is no indication that either the market or the office was searched.
 
 
 39
 Appellant also contends that the premises were not "isolated" as alleged by appellant, that there is nothing suspicious about a door with a peephole, and that there were three electrical meters on the building rather than two. Whether the property is "isolated" is a subjective determination and whether the building had two or three electrical meters is inconsequential. Affiant stated that the door had a peephole and appellant does not contest that fact. Rather, appellant seems to be arguing that it should not have been considered in determining whether there was probable cause. The peephole in the door, by itself, could not have established probable cause but was considered by the magistrate in the "totality of the circumstances." Gates, supra.
 
 
 40
 In the next allegation, appellant again raises the issue of the anonymity of the police officer's who gave the original tip. This issue has been fully explored in section II-A, supra.
 
 
 41
 The remaining four "erroneous or misleading" statements are as follow: that the IRS agents did not follow their own guidelines in seeking approval of the warrant application from IRS district counsel; that no "large black safe" was found inside the searched premises; that the officers were not experienced in gaming matters; and that there is no Charles Howard "Roper".
 
 
 42
 A review of the supporting affidavit does not show that affiant made any statement whatsoever in regard to the internal operating procedures of the IRS. This lack of a statement cannot be said to be misleading because the magistrate is not bound to follow IRS guidelines in deciding to issue or not issue a warrant.
 
 
 43
 Affiant stated that during the surveillance what looked like a large black safe was moved into the building. The fact that no such safe was found does not render affiant's statement erroneous or misleading. Affiant also stated that surveillance was conducted intermittently on only three days, June 17 and 18, 1985 and very briefly on the morning of July 3, 1985. If such a safe had been moved into the building, there was sufficient time for it to be removed without being observed. If affiant was mistaken and no safe was ever moved into the building, it is clear that that fact alone would not have diminished the "substantial basis for determining the existence of probable cause." Gates, 462 U.S. at 239.
 
 
 44
 Appellant does not fully explain or support the allegation that the officers involved were not experienced in gaming matters. Appellant merely relies on affiant's later statement that affiant had work experience in other areas of the IRS as well as in the Criminal Investigation Division. Work experience in other areas does not necessarily negate affiant's statement that he and the other officers involved had experience in investigating illegal gambling.
 
 
 45
 The name Charles Howard Roper is mentioned in the affidavit because the Nashville Electric Service records show the account for the market portion of the building to be in that name. The affidavit contains no allegations of wrongdoing in regard to Mr. Roper and sought no search of Mr. Roper's property or the market. Appellant does not state the source of his information in determining that no such person exists or its significance.
 
 D
 Fruit of the Poisonous Tree
 
 46
 The exclusionary rule of Weeks v. U.S., 232 U.S. 383 (1913) not only prohibits the use of articles or information obtained during an illegal search but also information obtained as a proximate cause of the illegal search. Silverthorne Lumber Co. v. U.S., 251 U.S. 385 (1920). In Nardone v. U.S., 308 U.S. 338 (1939), this latter type of information was referred to as "fruit of the poisonous tree." Id. at 341.
 
 
 47
 Appellant argues that but for the unidentified police officer's statement to IRS agents present at the earlier illegal search on Brick Church Pike, his property on County Hospital Road would not have been searched. He therefore concludes that all evidence obtained at the search of his property can be characterized as "fruit of the poisonous tree" and should be suppressed. We disagree.
 
 
 48
 As stated in Rakas v. Illinois, 439 U.S. 128 (1978), "Fourth Amendment rights are personal rights which ... may not be vicariously asserted," Id. at 133-34 (quoting Alderman v. U.S., 394 U.S. 165, 174 (1969)), and are intended to offer protection only to those who have a "legitimate expectation of privacy in the invaded place." Id. at 143; U.S. v. Salvucci, 448 U.S. 83, 91-92 (1980). Consequently, a defendant may not benefit from the protection of the exclusionary rule unless "the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party." U.S. v. Payner, 447 U.S. 727, 731 (1980). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas at 134. See also, U.S. v. Knox, 839 F.2d 285, 293 (6th Cir.1988).
 
 
 49
 In the present case, appellant vigorously asserts that he held a legitimate expectation of privacy in the County Hospital Road property. What appellant does not address is whether he had such an interest in the Brick Church Pike property. Without a legitimate expectation of privacy in the Brick Church Pike property, appellant has no claim that any evidence gathered at that search violated his rights under the Fourth Amendment. Therefore, the evidence obtained at the Brick Church Pike search, i.e. the police officer's statement, will not be suppressed. Because the police officer's statement is not a "poisonous tree," the exclusionary rule is inapplicable to the resulting "fruit"--the County Hospital Road evidence.
 
 III
 
 50
 Appellant was convicted under Count One of the indictment which charged a violation of 18 U.S.C. Sec. 371 in that he did:
 
 
 51
 willfully and unlawfully combine, conspire and agree together and with persons to the grand jurors unknown, to commit offenses against the United States, to wit: to violate Title 18, United States Code, Section 1955, by unlawfully, willfully and knowingly conducting, financing, managing, supervising, directing or owning an illegal gambling business involving numbers, in violation of the laws of the State of Tennessee....
 
 
 52
 J.App. at 11.
 
 
 53
 In order to be convicted of conspiracy under 18 U.S.C. Sec. 371, it was incumbent upon the government to prove beyond a reasonable doubt that appellant conspired with two or more persons to operate an illegal gambling operation in violation of 18 U.S.C. Sec. 1955. U.S. v. Sourapas, 515 F.2d 295 (6th Cir.1975).
 
 
 54
 The elements of 18 U.S.C. Sec. 1955 require proof of: (1) a violation of the gambling laws of the local state, in this case Tennessee; (2) involving five or more persons; (3) which has been or remains in substantially continuous operation for a period in excess of thirty days or has gross revenue of $2,000 in any single day.
 
 
 55
 Tennessee Code Annotated, Section 39-6-608 states in part that "[w]hoever engages in professional gambling ... or conspires with another to engage in professional gambling shall be guilty of a felony...." The statutory definition of "professional gambling" specifically includes "numbers games." Tenn.Code Ann. Section 39-6-601(8).
 
 
 56
 Appellant contends that two essential elements contained in the charged offense were not proven beyond a reasonable doubt as is required by the due process clause. Patterson v. New York, 432 U.S. 197 (1977). Specifically, it is argued that the government failed to prove: (1) that appellant was operating a numbers game, as opposed to other types of gambling, and (2) that appellant conspired to include five or more persons in the illegal gambling operation.
 
 
 57
 If appellant's conviction is supported by substantial evidence, viewed in the light most favorable to the government, it will be affirmed. Glasser v. U.S., 315 U.S. 60 (1942); U.S. v. Monroe, 833 F.2d 95 (6th Cir.1987); U.S. v. White, 788 F.2d 390 (6th Cir.1986). We also consider all inferences "reasonably and justifiably drawn" from the evidence presented. White at 393 (quoting U.S. v. Conti, 339 F.2d 10, 13 (6th Cir.1964)).
 
 
 58
 The evidence presented in this case was sufficient to support appellant's conviction. As to the evidence of the gambling operation, the following was introduced by the government: twelve bags of wagering paraphernalia including betting slips, a chalkboard with lists of names and telephone numbers, telephones and calculators, records indicating the volume of business conducted, and approximately $20,000 in cash.
 
 
 59
 Agent Doble was the sole government witness. He detailed the investigation that he and the other IRS agents had conducted as well as the surveillance of the County Hospital Road property. Based on that surveillance and the evidence gathered in the search, he concluded that a numbers operation was being conducted on the premises and that two persons were employed by appellant in this numbers operation. Appellant presented no proof at trial and waived argument to the court.
 
 
 60
 As to the evidence of a conspiracy, Mr. Tommy Schroeder and Mr. Russell Freeman admitted that they had been hired by appellant to work in the numbers bank tabulating tickets to determine whether the tickets were winners or not. This evidence satisfied the requirement of 18 U.S.C. Sec. 371 that appellant conspired with two or more persons.
 
 
 61
 It must be remembered that appellant was convicted of conspiracy to violate 18 U.S.C. Sec. 1955 and was not convicted of the substantive offense. Therefore, to sustain the conviction, the government need only produce evidence that appellant conspired to involve five or more persons in the gambling operation. The "five or more persons" required of the statute includes "all those who participate in the operation of an illegal gambling business, except customers or mere bettors, regardless of how minor their roles." U.S. v. Avarello, 592 F.2d 1339, 1349 (5th Cir.1979) cert. den. 444 U.S. 844 (1979); see also, U.S. v. Tarter, 522 F.2d 520 (6th Cir.1975).
 
 
 62
 The evidence of the surveillance showed that as many as twenty-six people were seen arriving and leaving the premises dropping off envelopes and at the time of the search four or five people were on the premises. Appellant did not dispute the accuracy of this evidence nor did he present any evidence of his own.
 
 
 63
 Based on his experience in the field of investigating illegal gambling, the IRS agent that testified at trial concluded that the twenty-six people seen arriving and leaving the premises were runners or employees and not customers. The large quantity of betting slips, records, and other evidence seized during the search, not to mention the $20,000 in cash, is consistent with this conclusion. Only the most naive observer would be seduced to believe that they were merely customers.
 
 
 64
 Viewing the above evidence in the light most favorable to the government and drawing all reasonable and justifiable inferences, we conclude that appellant's conviction was supported by substantial evidence.
 
 
 65
 Accordingly, appellant's conviction is affirmed.
 
 
 
 *
 The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation