**UNITED STATES of America**

v.

**George STEWART, Appellant.**

**No. 86–1316.**

United States Court of Appeals, Third Circuit.

Nov. 26, 1986.

Louis J. Ruch, McBride, Ruch & Gontram, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Jeanne K. Damirgian, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and COWEN, District Judge.*

OPINION OF THE COURT

ADAMS, Circuit Judge.

This case arises out of the highly-publicized activities in 1985 of some residents of Southwest Philadelphia in reaction to the purchase of a home in the neighborhood by a black family. After a two-day jury trial in federal district court, the defendant, George Stewart, was convicted on March 27, 1986 of one count each of conspiring to violate the rights of United States citizens, 18 U.S.C. § 241, and of attempting to destroy government property by fire, 18 U.S.C. § 844(f). Stewart was sentenced to five years in prison on Count One, and five years probation and approximately $8,300 in fines on Count Two. Stewart now appeals, claiming that the evidence presented by the government is insufficient as a matter of law to sustain the conviction under Count One, and further that the district court erred in admitting testimony by a neighbor of the black family whose home was damaged by the fire.

I.

Marietta Bloxom and Charles Williams, a black couple, purchased a row house located at 2548 South 61st Street in Philadelphia from the Veteran's Administration on October 31, 1985. They moved into the house the following weekend, and almost immediately became the targets of racially oriented demonstrations and harassment by white residents of the neighborhood. There was testimony at trial that Bloxom and Williams left the house on November 20, after "BB gun" pellets were shot through the windows. App. at 188a. Ac-

---

* Honorable Robert E. Cowen, United States District Court for the District of New Jersey, sitting   by designation.

cording to Bloxom, the couple arranged with the Veteran's Administration to leave all their belongings except day-to-day clothing in the house until they could locate new housing in a more hospitable environment.

The incidents that precipitated the prosecution of Stewart took place some three weeks after Bloxom and Williams had moved out of their house. During the evening of December 12, the house was burned after gasoline was poured on the living room floor and ignited. The house also had been burgled several hours before the fire.

On February 6, 1986, a federal grand jury indicted Stewart and two codefendants, Vincent Callahan and Thomas O'Donnell, charging them with conspiring to violate the constitutional rights of United States citizens, and with attempting to destroy government property by fire. Prior to trial, the two codefendants pled guilty to both counts, and appeared as witnesses for the government.

Callahan testified that he met O'Donnell and Stewart at a street corner near the house at about 6 p.m. on December 12, 1985. All three drank beer they had purchased at a nearby bar, and discussed the increased police surveillance of the neighborhood. According to Callahan, the group, accompanied by a fourth young man, eventually broke into the house, and took several small articles. When asked about the motive for the burglary, Callahan stated that they all wanted to "keep other blacks from moving in." App. at 154a. The group went to Stewart's house, Callahan testified, and left the stolen items there. Stewart then suggested that they burn the house, and although O'Donnell was at first reluctant to set the house afire, Callahan and O'Donnell purchased gasoline at a neighborhood gas station. Callahan stated that he poured the gasoline onto the living room floor, and that Stewart ignited it with a match. Once again, when asked what prompted him to set fire to the house, Callahan answered that the three young men had acted "so them or other blacks couldn't move back in." App. at 161a.

Callahan also testified that he was aware that the government owned the house.

In his testimony, O'Donnell substantially corroborated Callahan's story, and gave his reason for participating in the arson as wanting to ensure "that the neighborhood wouldn't be so, you know, hot and there were cops all over and the black family wouldn't return to live in the house." App. at 237a.

Also appearing as government witnesses were Gregory Downs, an employee of the gasoline station, and Barbara Mangano, who lives next door to the 2548 South 61st Street property. Downs testified that he sold one dollar's worth of gasoline to Callahan and O'Donnell during the evening of December 12. Mangano stated that when she looked through the first-floor windows of 2548 at approximately 9:35 p.m. that evening, she observed flames and that she evacuated her family shortly before the windows of 2548 were blown out by the fire. Stewart did not testify.

After deliberating for approximately 4½ hours, the jury returned verdicts of guilty on both counts of the indictment. District Court Judge Newcomer denied post-trial motions for a new trial and for judgment of acquittal on April 28, 1986, and sentenced Stewart on May 13. In his appeal, Stewart claims that there was insufficient evidence to support the convictions, and that the trial court erred in admitting a portion of Mangano's testimony.

## II.

Stewart's primary argument is that the government did not prove all the elements necessary to obtain a conviction under 18 U.S.C. § 241, which prohibits interference with the rights of United States citizens. Because the house was not occupied on December 12, 1985—the night of the fire—Stewart insists that he may not be punished for a conspiracy to interfere with the exercise of the owners' right to live in the house: "A conspiracy directed at vandalism and burning of a particular building does not amount to a violation of 18 U.S.C. § 241 unless there is sufficient evidence to

show someone is exercising a right to live at that location at the time of the offense." Brief for Appellant at 9–10.

Viewing the evidence in the light most favorable to the government, as we must, it is necessary to decide whether the evidence is sufficient to allow a rational jury to conclude that the defendant has committed the crime charged beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Lebovitz,* 669 F.2d 894, 896–97 (3d Cir.1982). We conclude that the testimony by Callahan and O'Donnell that their actions were designed to prevent Bloxom and Williams from moving back into the house is sufficient to support the conclusion that Stewart's intent was to interfere with the rights of Bloxom and Williams to live in the house they had purchased. As Callahan testified at trial, "[e]verybody thought that they [Bloxom and Williams] would be back in." App. at 183a. This statement, and similar testimony given by O'Donnell, undermines Stewart's claim that the government has not shown anything more than the intent to vandalize an empty building.

Further, the indictment charges that Stewart conspired to interfere with the rights of "other black citizens" who might wish to purchase the house at 2548 South 61st Street. Even if the evidence was inadequate to establish that Stewart intentionally conspired to interfere with the rights of Bloxom and Williams, the government argues, Stewart's conduct was designed to prevent any black United States citizen from moving into the house.

In cases where there is bias against a large group it is difficult if not impossible specifically to delineate a narrow class of intended victims. As the government points out, the courts have recognized that a § 241 violation may be predicated on interference with the rights of a broad class of potential victims. *See, e.g., United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) (reversing dismissal of § 241 indictment that charged intimidation of black citizens "in vicinity of Ath-

ens, Georgia"); *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) (victims were qualified voters and qualified candidates in primary elections from the Second Congressional District of Louisiana); *United States v. Purvis,* 580 F.2d 853 (5th Cir.1978) (victims were inmates of county jail); *United States v. Fruit,* 507 F.2d 194 (6th Cir.1974) (victims were black students of Michigan school district).

In particular, the government cites *United States v. Konovsky,* 202 F.2d 721 (7th Cir.1953), which upheld a conviction charging the defendants with conspiring to threaten "any Negro citizen of the United States who might then or thereafter seek to lease to or from any person, or to occupy ... or enjoy access to any real property in the said Town of Cicero, and in particular the premises ... known as 6139 West 19th Street...." 202 F.2d at 724.

▮ Like Stewart's conspiracy, the government stresses, *Konovsky* involved a conspiracy to prevent all black citizens from occupying housing in an otherwise all-white neighborhood. The testimony of Callahan and O'Donnell also supports this theory of the indictment. The burglary and arson, according to both witnesses, was directed not only at preventing Bloxom and Williams from moving back into the house, but also "[t]o keep other blacks from moving in." App. at 154a. Thus, a reasonable jury could conclude that Stewart's actions were motivated by an intent to interfere with the rights of other, unspecified black citizens, as well as with the rights of Bloxom and Williams.

With regard to both counts, Stewart argues that the district court erred in admitting a portion of the testimony of Barbara Mangano, a resident of 2550 South 61st Street, the house next to Bloxom's. In the course of her testimony, Mangano stated that she returned home to find 2548 in flames, and removed her children from her house only moments before the windows of 2548 exploded. App. at 295a. Both at trial and on appeal, Stewart has argued that "[e]vidence that the fire threatened or en-

dangered occupants of an adjoining property has no relevance to any element of the offense charged and the admission of the testimony into evidence was highly prejudicial of the defendant's right to a fair trial." Brief for Appellant at 11.

This second argument, which challenges the admission of testimony at trial, is reviewable under an abuse of discretion standard. *In re Japanese Electronic Products,* 723 F.2d 238, 260 (3d Cir.1985). If it is found that the judge abused his discretion in admitting Mangano's testimony about her children, we then must inquire whether the error was prejudicial, or was harmless in that it was highly probable that the error did not contribute to the jury's verdict. *Government of Virgin Islands v. Toto,* 529 F.2d 278, 284 (3d Cir. 1976).

■ The government responds to Stewart's argument by asserting that, because there was no testimony that the children or anyone else had actually been hurt, Mangano's brief reference to the presence of her children could not be prejudicial. Even granting Stewart's relevancy point, as the government apparently has done, we cannot find that the admission of Mangano's testimony with regard to her children was prejudicial.

Stewart urges that the jury's analysis of the credibility of other government witnesses was influenced by Mangano's testimony about her children. The relationship between the allegedly irrelevant testimony and the credibility of other witnesses is not clear, however. Mangano did give other, admittedly relevant, evidence that corroborated the testimony of Stewart's codefendants. It is this portion of Mangano's testimony, rather than her reference to her children, that is likely to have influenced the jury in its evaluation of the credibility of the codefendants. Consequently, even if the testimony regarding the children was irrelevant, and the court abused its discretion in admitting the testimony, we cannot say that the claimed error was prejudicial.

### III.

In sum, Stewart's arguments are not persuasive, and the judgment of the district court will be affirmed.