**Leona MEDINA and Margaret Garcia, Appellants,**

**v.**

**LANABI INC., Jack Ford and Roberto Abimerhi, Appellees.**

**No. C14–92–00900–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 20, 1993.

Rehearing Denied June 17, 1993.

**162**

Dennis G. Herlong, John R. Craddock, Houston, for appellants.

Frank G. Waltermire, Roy Murphy, III, Houston, for appellees.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

ROBERTSON, Justice.

At the conclusion of appellants' presentation of evidence, the trial judge directed a verdict against appellants on their cause of action for wrongful termination. Trial proceeded and at the close of all evidence, the trial judge submitted questions on civil conspiracy and damages. The jury found no conspiracy and did not answer the other questions. Appellants bring thirteen points of error but, as conceded at oral submission, the controlling question is of course, whether the directed verdict was proper, because, if it was, the other issues, except for the complaint about the question actually submitted and the indigency issue, are moot. We affirm.

Appellants' brief begins with the statement "This is a wrongful termination case under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985). . . ." While the trial judge did not state his reason for granting the directed verdict, there is no dispute that his reason for doing so was that there was no evidence that the discharge of appellants was for the sole reason that they refused to violate a law which carried a criminal penalty.

■ Although the record is voluminous, the facts necessary for resolving the controlling issue are quite simple. Since the trial judge directed a verdict on the wrongful discharge cause of action, we need only recite those facts which, viewed in their most favorable light, support the cause of action, disregarding all contrary evidence and inferences. *See White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983).

Appellant Leona Medina (Medina) was hired as the apartment leasing manager for the Spring Oaks Apartments, containing some 100 apartments, in June 1989, and at about the same time appellant Margaret Garcia (Garcia) was hired as assistant manager. In August 1989, the apartment project was sold to and purchased by Lanabi, Inc., a corporation owned by Roberto Abimerhi. Jack Ford was the property manager for Abimerhi and Lanabi. Medina and Garcia were hired by Lanabi to continue in their same duties. Appellants' evidence was that immediately, Ford began ordering them, upon threat of losing their jobs, not to lease any more apartments to Black or Mexican–American applicants and to get rid of all Black and Mexican–American tenants then living in the Spring Oak Apartments. The evidence of both appellants was that they knew Ford's instructions required them to violate the law and so instructed Ford. Both testified that they were fired in September 1989 because they refused to follow Ford's instructions concerning discrimination.

Appellants filed suit alleging that the sole reason for their termination "was their refusal to violate state and federal laws in the course of their employment." They alleged discrimination in housing was prohibited by some seven federal statutes and some five state statutes. At oral argument, however, appellants agreed that of all the statutes referenced, both federal and state, only two federal statutes, 18 U.S.C.A. § 241 and 42 U.S.C.A. § 3631 provide criminal penalties. Appellants do not dispute that under *Sabine Pilot* the illegal act they were required to perform as a condition of continued employment must be punishable as a crime.

While appellants correctly contend that 42 U.S.C.A. § 3631 provides a criminal penalty for its proscriptions, they do not seriously contend that the statute applies to the facts proven. The statute, so far as applicable to rental of housing, provides:

> Whoever, whether or not acting under color of law, *by force or threat of force* willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—
>
> > (a) any person because of race, [or] color, ... and because he is or has been renting, ... occupying, or ... negotiating for the ... rental, ... or occupation of any dwelling, ... or
> >
> > \*     \*     \*     \*     \*     \*
> >
> > (c) any citizen because he is or has been, or in order to discourage such citizen or any other citizen from lawfully aiding or encouraging other persons to participate, without discrimination on account of race, [or] color, ... in any of the ... facilities described in subsection (a) of this section, ...
>
> shall be fined not more than $1,000, or imprisoned not more than one year, or both; and if bodily injury results shall be fined not more than $10,000, or imprisoned not more than ten years, or both; and if death results shall be subject to imprisonment for any term of years or for life.

42 U.S.C.A. § 3631 (Supp.1992) (italics supplied). Thus it is seen that to be in violation there must be a use of force or the threat of force. Looking at the evidence in the light most favorable to appellants, there simply is *no evidence* that either appellant was faced with the alternative of using force or the threat of force in discriminating in the rental of apartments as a condition of their continued employment. We therefore conclude that 42 U.S.C.A. § 3631 has no applicability to the case before us.

Appellants strenuously urge, however, that had they agreed to deny the rental of apartments to new Black or Mexican–American tenants, or had they terminated the occupancy of such tenants then living in apartments, they would have been in violation of 18 U.S.C.A. § 241 and therefore liable to criminal punishment. Section 241 provides:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any State, Territory, or District in the free exercise or enjoyment of any right or privilege secured to him the Constitution or laws of the United States, or because of his having so exercised the same;
>
> \*     \*     \*     \*     \*     \*
>
> They shall be fined not more than $10,-000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life.

18 U.S.C.A. § 241 (Supp.1992).

This statute has a long and interesting history. *See United States v. Williams*, 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758 (1951). It was first enacted in 1870, as part of "An Act to enforce the Right of Citizens of the United States to vote in the several States of this Union, and for other Purposes." Since then it has been carried forward into the Criminal Code of 1909 and finally into the United States Code.

We have found only two cases in which the statute was applied to a conspiracy that did not involve acts of violence or the threat of violence. Those two exceptions are (1) where the object of the conspiracy was the commission of certain violations of

election laws,[1] and (2) in the burglary of Dr. Louis Fielding's office in an effort by John Ehrlichman and others to examine and copy the records of Daniel Ellsberg. *United States v. Ehrlichman,* 546 F.2d 910 (D.C.Cir.1976). Interestingly, in *Ex parte Yarbrough,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884), the first case where the Supreme Court held the present § 241 applicable to protect voting rights, the indictment alleged the use of force by the conspirators. However, there can be no doubt that the court set the stage for what was to follow in the "ballot box stuffing" cases with its conclusion:

> If the government of the United States has within its constitutional domain no authority to provide against these evils,—if the very sources of power may be poisoned by corruption or controlled by violence and outrage, without legal restraint,—then, indeed, is the country in danger, and its best powers, its highest purposes, the hopes which it inspires, and the love which enshrines it, are at the mercy of the combinations of those who respect no right but brute force on the one hand, and unprincipled corruptionists on the other.

*Id.* at 667, 4 S.Ct. at 160. In *Ehrlichman* the court held that entry into a doctor's office by government agents without proper authorization to secure information for an ostensible government purpose was a civil rights conspiracy in violation of § 241. *Ehrlichman,* 546 F.2d at 928.

Appellants have cited only three cases where § 241 has been applied in housing discrimination. *United States v. White,* 788 F.2d 390 (6th Cir.1986); *United States v. Stewart,* 806 F.2d 64 (3rd Cir.1986), and *United States v. Lee,* 935 F.2d 952 (8th Cir.1991). In *White,* the conspirators injured, oppressed, threatened and intimidated the black home owners by burning their home then under construction. 788 F.2d at 392. In *Stewart,* the conspirators injured, oppressed, threatened and intimidated the

black tenants by shooting through the windows, burglarizing the house and then burning it. 806 F.2d at 65–66. In *Lee,* the intimidation of the black tenants in an apartment complex was by the burning of a cross nearby. 935 F.2d at 954. Neither side has referred us to a case, and our research has not revealed a single instance, in which § 241 has been used to make it a *felony* offense to conspire to *deny housing* to a person because of race or color. It seems problematic to us that the federal courts would so extend § 241. This is so because 42 U.S.C.A. § 3631, *requires* force or the threat of force to constitute only the *misdemeanor* offense of denial of housing because of race or color. It would be incongruous to hold that a conspiracy to merely deny housing is a felony offense but that to use force or the threat thereof in such denial is only a misdemeanor.

The *Sabine Pilot* exception to the employment at will doctrine is an extremely narrow one. In *Sabine Pilot,* the trial court had granted a summary judgment. The sole issue before the supreme court was whether an allegation by an employee that he was discharged for refusing to perform an illegal act stated a cause of action. *Id.* at 734. The facts concerning the illegal act were plain and straightforward—the employee testified that one of his duties each day was to pump the bilges on the boat on which he worked. *Id.* A placard was posted on the boat which stated it was illegal to pump the bilges into the water. *Id.* He had called the coast guard and an officer confirmed that pumping bilges into the water was illegal and he therefore refused to do so. *Id.*

■ The facts in our case are not so straight-forward. While appellants testified they believed that denial of housing because of race or color was illegal, *illegality* is insufficient; the illegal act must be one to which a criminal penalty is attached.

---

**1.** See, e.g., *United States v. Mosley,* 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355 (1915); *United States v. Saylor,* 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944); *Crolich v. United States,* 196 F.2d 879 (5th Cir.1952); *United States v. Morado,* 454

F.2d 167 (5th Cir.1972); but see *United States v. Bathgate,* 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676 (1918) where the Supreme Court held that a conspiracy to bribe voters did not fall within § 241.

There being no federal precedent that a conspiracy to deny housing, in and of itself, is a crime under § 241, we refuse to so hold. We hold that the trial court properly directed a verdict on appellants' wrongful discharge claim and overrule appellants' first and second points of error.

■ In their seventh point of error appellants contend the "trial court erred and abused its discretion in submitting jury question no. 1 on civil conspiracy because it is vague and undefined and not the controlling· question in dispute."

As above stated, after the trial judge directed a verdict on the wrongful discharge claim, the only request made by appellees, trial proceeded. Appellants' live pleading alleged, under the heading *"Causes of Action,"*

11.  The above and foregoing, singularly and/or in concert, combination or conspiracy, give rise to at least the following causes of action:
   a.  wrongful termination;
   b.  breach of contract;
   c.  negligence;
   d.  gross negligence;
   e.  negligent misrepresentation; and
   f.  common law fraud.

At the close of the evidence the trial court submitted Question No. 1:

Do you find from a preponderance of the evidence that on the dates and times in question Robert Abimerhi and Jack Ford engaged in a civil conspiracy?

You are instructed that by the term "civil conspiracy" is meant a combination between two or more people for the purpose of accomplishing an unlawful act or for the purpose of accomplishing a lawful act by unlawful means. In order to find a conspiracy, you must find from a preponderance of the evidence each and every one of the following elements; (1) there was a combination of two or more persons; (2) there was an agreement or meeting of the minds among those of a common purpose; (3) each of those persons had knowledge of the purpose and intended to participate therein; and (4) one or more overt acts are done in pursuance of the conspiracy.

The jury answered "We do not."

Both sides objected to the question. At oral submission, neither could articulate a reason for the submission of the issue, other than appellees' pointing to appellants' assertion of conspiracy at trial. While we likewise cannot discern a reason for the submission of the issue—and definitely not in the manner in which it was submitted—we fail to find any reversible error for two reasons. First, the jury answered the issue in the negative. Second, and more importantly, in very short argument in support of the point, appellants only argue error because of the failure of the trial court to "submit the correct, controlling issue of wrongful termination" under *Sabine Pilot.* The trial court had already determined this issue as a matter of law. Finding no reversible error, appellants' seventh point is overruled.

■ In their twelfth point of error appellants contend the trial court erred in sustaining a contest to appellants' affidavits of inability to give cost bond on appeal. After the trial judge sustained the contest, appellants filed their cost bond rather than contest the trial court action by mandamus—the proper remedy. *Allred v. Lowry,* 597 S.W.2d 353 (Tex.1980). Appellants' twelfth point is overruled.

Our holding renders moot appellants' contentions concerning failure to submit issues to the jury, admissibility of certain evidence and a Batson challenge to an excused juror.

We affirm the judgment of the trial court.