

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2009

# USA v. Zgrzepski

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1871

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Zgrzepski" (2009). *2009 Decisions.* Paper 1495.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1495

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-1871

———————

UNITED STATES OF AMERICA

v.

JOHN ZGRZEPSKI,
a/k/a John Zgrepski, a/k/a John Mullen,
a/k/a John Zarzepski

John Zgrzepski,
Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 06-cr-0011-1
(Honorable James T. Giles)

———————

Argued November 17, 2008
Before: SCIRICA, *Chief Judge*, FUENTES and HARDIMAN, *Circuit Judges*.

(Filed April 23, 2009)

SALVATORE C. ADAMO, ESQUIRE (ARGUED)
289 Town Center Boulevard, Suite 300
Easton, Pennsylvania 18040
    Attorney for Appellant

WILLIAM L. INDEN, ESQUIRE (ARGUED)
ROBERT A. ZAUZMER, ESQUIRE
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
    Attorneys for Appellee

SCIRICA, *Chief Judge*.

## I.

John Zgrzepski was convicted of aiding and abetting in the interference with interstate commerce by robbery in violation of 18 U.S.C. §§ 1951(a) and 2. On appeal, Zgrzepski challenges both his conviction and sentence. In challenging his conviction, Zgrzepski alleges the District Court erred by (1) failing to grant his post-trial motion for acquittal, (2) denying his request to present certain documents to the jury, and (3) refusing to dismiss jurors after an out-of-court incident. Additionally, Zgrzepski contends his sentence is unreasonable.

## II.

At approximately 11 p.m. on February 11, 2005, two gunmen entered the Casa Bella pizza shop at 2625 East Tioga Street, Philadelphia, shortly before closing. The larger man, later identified as co-defendant Allen French, wore black gloves and a large black leather jacket over a white hooded sweatshirt. He brandished a semi-automatic gun and had a grey t-shirt tied around his head to conceal his face. The smaller man, later identified as co-defendant Ian Greenstein, wore red gloves, a black skull cap, dark blue pants, and a long white t-shirt underneath a green jacket. He brandished a revolver and had a green t-shirt tied around his head to conceal his face. Both men ordered everyone in the store to the ground. The larger gunman went behind the front counter and took

money directly from the owner of the store, Theocharis Zisios, and from the store's cash register, putting it into a canvas bag also stolen from the store. The smaller gunman retrieved store employee Sherrie Wright from the back of the store, then forced her, the store's driver, and a customer to sit beneath the counter. He took money from the driver and demanded that the customer hand over his ring.

The two gunmen then herded the six people into the back of the store, ordering everyone into the walk-in freezer. They went to the back of the store, but ran out the back door instead of going into the freezer. The gunmen fled out the front door. The entire incident was captured on videotape by four separate security cameras set up throughout the store.

Once the victims were outside the store, they fled down an alley and out to a connecting street. From there, they saw a gray, four-door sedan drive slowly, without its headlights, down the street adjacent to the pizza shop with three people inside, two of whom appeared to have something covering their heads. The victims, including Zisios and Wright, were unable to tell who was driving the car.

Philadelphia police officers responded to the scene of the robbery within minutes. Some of the officers watched the videotape in order to be able to broadcast descriptions of the robbers, and other officers began canvassing the surrounding area. Within about ten minutes of the robbery, Philadelphia police officers responded to a call of prowlers in the backyard of a house on the 3600 block of Livingston Street, only a few blocks from the pizza shop.

3

Philadelphia Police Officer Michael Walsh, who had seen the videotape, went to the location of the prowler call and, after hearing the rattling of the chain link fence and voices, saw three men, later identified as John Zgrzepski, Ian Greenstein, and Allen French, huddled together in the backyard. He immediately recognized two of them as matching the descriptions of the gunmen from the video. He also saw that those same two men had guns in their hands. Officer Walsh announced himself as a police officer, and the three men, including Zgrzepski, immediately fled in the same general direction.

Police officers caught Zgrzepski between Almond and Mercer Streets, within about a block of where Officer Walsh first had seen Zgrzepski huddling with his co-defendants on the 3600 block of Livingston Street. Police recovered $140 from his person. He was wearing a black jacket and a Pittsburgh Steelers jersey, which did not match what either of the gunmen in the video appeared to be wearing. Shortly after he was caught, Zgrzepski repeatedly stated to Casa Bella employee Sherrie Wright, who had been driven out to see if she could make an identification, "I wasn't in your store."

Police officers caught Allen French within about a block of first encountering him. French was wearing a white hooded sweatshirt that matched the one worn by the larger gunman in the video. While being chased, French discarded a knotted gray t-shirt and a pair of black gloves that also matched items worn by the larger gunman. The police recovered $204 and a "Circus Man" ice cream receipt showing a delivery to Casa Bella on February 11, 2005, from French's pocket. The receipt was identified by Mr. Zisios as having been taken from the cash register during the robbery.

4

Officer Walsh chased Ian Greenstein, following him for well over a block, hopping several fences in the backyards behind the houses between Mercer and Thompson Streets as they ran. Officer Walsh got as close as 10 to 15 feet from Greenstein, and could see that he was wearing clothes that matched those of the smaller gunman in the video, i.e., dark blue pants and a long white t-shirt under a green jacket. Officer Walsh also was able to see Greenstein's face clearly on several occasions when Greenstein looked back. As he was closing in, Officer Walsh got caught on a fence and Greenstein escaped. Officer Walsh combed the area, and close to where he last saw Greenstein, he recovered a black skull cap, a pair of red gloves, and a green t-shirt. These items all matched what the smaller gunman in the video was wearing.

Following his escape from Officer Walsh, Greenstein knocked at the front door of the home of Tracy Zgrzepski, the sister of Zgrzepski and an employee of Casa Bella, who also lived nearby. Ms. Zgrzepski knew Greenstein through her brother, Zgrzepski. She had known him for five to seven months, and she had seen him at least 50 times during that period, including at least 10 times when he went to lunch with Zgrzepski at Casa Bella. Greenstein also had been to Ms. Zgrzepski's house on prior occasions, both for social visits and looking for Zgrzepski. Ms. Zgrzepski was not working at Casa Bella on the night of the robbery. Nonetheless, by the time of Greenstein's visit, she was aware of the robbery, already had watched the videotape, and knew that her brother had been arrested for the robbery earlier in the night. She immediately recognized Greenstein as one of the robbers in the video, and she did not let him inside. Greenstein ran away. Ms.

5

Zgrzepski told the police about her encounter with Greenstein, and that she recognized him as being one of the gunmen in the video.

During the night of February 11, 2005, and the next morning, the police recovered several additional pieces of evidence from Livingston Street, in the area near where Officer Walsh first surprised the huddled defendants, including the canvas bag taken from Casa Bella containing $751. The police also recovered two handguns: a loaded revolver that was identified by Sherrie Wright as having been used by the gunman who forced her to sit under the counter, and a loaded 40 caliber semiautomatic pistol that was identified by Mr. Zisios as having been used by the gunman who took money from him, and forced him to empty the register.

In addition, parked nearby on the 3600 block of Mercer Street, the police found a 1990 four-door Honda Accord that previously had been reported stolen, and that was identified as the getaway car that had driven past the pizza shop with three people inside following the robbery. The location of this getaway car was not only close to where Officer Walsh had surprised Zgrzepski and his co-defendants, but it also was close to where the police had captured the fleeing Zgrzepski. There was loose change scattered on the floor of the car, and from the back seat, the police recovered a black leather jacket that matched the jacket worn by the larger gunman in the video of the robbery. Harry Zisios also identified the jacket as having been worn by one of the gunmen.

III.

6

Zgrzepski first contends the District Court erred in failing to grant his motion for acquittal under Fed. R. Crim. P. 29(c). "In ruling on a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence.'" *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)). Insufficiency of the evidence will only be found in "cases where the prosecution's failure is clear." *Smith*, 294 F.3d at 477. When conducting its review, a court must avoid "usurp[ing] the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Brodie*, 403 F.3d at 133. We exercise plenary review of the District Court's denial of Zgrzepski's motion for acquittal and independently apply the same standard as the District Court. *Id.*

Zgrzepski was convicted of aiding and abetting an armed robbery by serving as the getaway driver. In order to convict a defendant for aiding and abetting, "the prosecution must show that the defendant 'associate[d] himself with the venture, that he participate[d] in it as something that he wishe[d] to bring about, and that he [sought] by his action to make it succeed.'" *United States v. Bey*, 736 F.2d 891, 895 (3d Cir. 1984) (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)) (alterations in original). Zgrzepski does not dispute that the robbery took place; he challenges the sufficiency of the evidence tying him to the robbery. As we have previously determined, serving as a getaway driver

7

is sufficient to constitute aiding and abetting the commission of a robbery. *See, e.g.*, *United States v. Bamberger*, 460 F.2d 1277, 1278 (3d Cir. 1972) (determining evidence proving defendant served as getaway driver for bank robbery was sufficient to establish guilt for aiding and abetting). Accordingly, the jury's verdict will be upheld so long as, after viewing the evidence in a light most favorable to the government, we determine "any rational trier of fact" could have found beyond a reasonable doubt that Zgrzepski served as the getaway driver. *Smith*, 294 F.3d at 476.

We believe the following evidence is sufficient to persuade a rational juror of Zgrzepski's guilt beyond a reasonable doubt: On the night of February 11, 2005, two masked gunmen entered and robbed Casa Bella Pizzeria. After the two gunmen fled the store, the store's owner, Mr. Zisios, and one of his employees, Sherrie Wright, saw a four-door, gray sedan drive away from the restaurant. In the car were the two masked gunman, and a third individual, who was driving. Ten minutes later, police responded to a report of prowlers in the backyard of a home close to the robbery. When the police arrived, they saw three men huddled together. When Officer Michael Walsh identified himself, all three men fled. Two of them were immediately apprehended—one of whom was Zgrzepski. Police returned to the backyard from which Zgrzepski had fled, and there they recovered the firearms used in the robbery, a canvas bag containing a portion of the stolen money,[1] and some clothing worn by the robbers.[2] When Zgrzepski was caught,

---

[1]The canvas bag contained $751; however, according to the calculations of the

(continued...)

8

police found one hundred forty dollars cash in his pocket. Near the location where Zgrzepski was arrested, police recovered a stolen four-door, gray sedan matching that described by Ms. Wright. Loose change was scattered about the interior of the car, and a black leather jacket matching that worn by one of the robbers was found in the car's back seat.[3] Shortly after Zgrzepski was arrested, the police asked Sherrie Wright to come observe Zgrzepski for the purposes of identification. When Zgrzepski saw Ms. Wright, he said to her, "I wasn't in your store." Finally, later that night, Tracy Zgrzepski—who is not only defendant's sister, but was also a Casa Bella employee, though coincidentally not working the night of the robbery—received an unexpected visit at her home from a man looking for the defendant. The unexpected visitor was Ian Greenstein, the robber who had evaded police earlier that night.

Considering the above evidence in a light most favorable to the government, we believe a rational juror could find it sufficient to prove beyond a reasonable doubt that Zgrzepski was the getaway driver, and therefore guilty of aiding and abetting in the

---

[1](...continued)
restaurant owner, Mr. Zisios, the money stolen from his cash register exceeded that amount.

[2]The recovered clothing matched that worn by the robbers in the restaurant surveillance video.

[3]The jacket was identified based on the restaurant's surveillance video, and by the testimony of the restaurant owner, Mr. Zisios. Sherrie Wright was later shown photographs of the stolen sedan, and identified it as the same car she saw drive by immediately after the robbery.

robbery. Accordingly, the District Court did not err in refusing to grant Zgrzepski's motion for acquittal.

IV.

Zgrzepski contends the District Court abused its discretion in denying his post-trial motion for a new trial under Fed. R. Crim. P. 33.[4] Zgrzepski's motion claimed the District Court erred in denying his request to send certain documents to the jury,[5] and in refusing to dismiss two jurors after an incident outside of the courtroom. Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. We do not believe the District Court abused its discretion in this case.

Evidentiary decisions, including whether or not to allow the jury to take exhibits into their deliberation room, are within the sound discretion of the trial court.[6] *United States v. McCarthy*, 961 F.2d 972, 978 (1st Cir. 1992) (quoting *United States v. Rawwad*,

---

[4]We review denial of a Rule 33 motion under an abuse of discretion standard. *United States v. Jasin,* 280 F.3d 355, 360 (3d Cir. 2002).

[5]Zgrzepski does not specify in his brief to which exhibits his argument refers. However, based on Mr. Newman's colloquy at the close of trial, we take him to be referring to exhibits D-1, D-2 and D-4, which consist of a Philadelphia Police Department Investigation Interview Record containing the post-robbery statement given by Casa Bella employee Sherrie Wright (Exhibit D-1), a Philadelphia Police Department incident report form 48 from the initial robbery investigation (Exhibit D-2), and a FBI 302 form recounting an interview between Sherrie Wright and Special Agent Joseph Majarowitz Jr. (Exhibit D-4).

[6]We review the District Court's evidentiary rulings under an abuse of discretion standard. *United States v. Stewart*, 806 F.2d 64, 68 (3d Cir.1986).

10

807 F.2d 294, 297 (1st Cir.1986)); *United States v. Gross*, 451 F.2d 1355, 1359 (7th Cir.

1971); *Murray v. United States*, 130 F.2d 442, 444 (D.C. Cir. 1942); *Hughes v.

Hemingway Transp., Inc.*, 539 F. Supp. 130, 132 (E.D. Pa. 1982). There is no abuse of

discretion unless the exclusion of evidence was prejudicial. *Leathers v. United States*,

471 F.2d 856, 863 (8th Cir. 1972); *Murray*, 130 F.2d at 444. Even if the district court is

found to have abused its discretion, its evidentiary ruling will stand if we conclude the

error was harmless.[7] *United States v. Casoni*, 950 F.2d 893, 902 (3d Cir. 1991).

The District Court was acting within its discretion when it rejected Zgrzepski's

request to send exhibits D-1, D-2, and D-4 to the jury. The court allowed extensive

testimony as to the contents of those exhibits, but refused to allow them to go to the jury

because it determined they contained inadmissible hearsay. Under the circumstances, we

see no error. Furthermore, we do not believe Zgrzepski was prejudiced by the District

Court's ruling. Accordingly, the District Court did not abuse its discretion by refusing to

send exhibits D-1, D-2, and D-4 to the jury, and any error, in any event, was harmless.

Also, Zgrzepski claims the District Court abused its discretion by failing to

discharge two jurors after those jurors came into contact with a man thought to be

Zgrzepski's father. "In a criminal case, any private communication, contact, or tampering

---

[7]An error is harmless when we are left with "a sure conviction that the error did not prejudice the defendant," and can "say that it is 'highly probable' that the district court's errors did not contribute to [the] jury's judgment of conviction." *United States v. Stevens*, 935 F.2d 1380, 1407 (3d Cir. 1991) (quoting *United States v. Jannotti*, 729 F.2d 213, 220 n. 2 (3d Cir. 1984), and *Government of Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976)) (citations omitted).

11

directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." *Remmer v. United States*, 347 U.S. 227, 229 (1954). This presumption, however, is not conclusive. *Id.* The District Court should hold a hearing in which the Government bears the burden to prove the impropriety "did not and will not prejudice the defendant." *United States. v. Vega*, 285 F.3d 256, 266 (3d Cir. 2002). As was done in this case, the district court "must conduct a *voir dire* of all jurors with whom the improper communication occurred that is sufficiently tailored to probe adequately the possibility of prejudice." *Id.* We are tasked with determining whether Zgrzepski suffered "substantial prejudice" from the out-of-court juror-incident by making a "determination on the basis of an objective analysis by considering the probable effect of the allegedly prejudicial [incident] on a hypothetical average juror." *Id.* (quoting *United States v. Gilsenan*, 949 F.2d 90, 95 (3d Cir. 1991)).

Upon learning about the incident, the District Court immediately held a hearing in which it conducted a thorough *voir dire* of both jurors involved as well as all jurors who were aware the incident had occurred. The court questioned each juror regarding his or her ability to remain fair and impartial, and each juror confirmed his or her continuing impartiality. Despite these assurances, defense counsel requested dismissal of Jurors # 42 and # 34. The court ruled otherwise on the grounds that the jurors had maintained their impartiality, and dismissal would only draw attention to the incident and exaggerate its

12

importance in the minds of the remaining jurors. Furthermore, the court instructed the jury that events occurring outside the courtroom are not evidence and must not be considered in reaching a verdict.

In light of the assurances given by the jurors and the instructions provided to them by the District Court, we are confident that an average hypothetical juror's impartiality would not be tainted under these circumstances. Accordingly, Zgrzepski did not suffer substantial prejudice as a result of the incident, and the District Court did not abuse its discretion in rejecting Zgrzepski's request to dismiss Jurors # 42 and # 34.

Because neither the District Court's refusing to send Zgrzepski's exhibits to the jury nor its denying his request to dismiss Jurors # 42 and # 34 were an abuse of discretion, the court did not err in denying Zgrzepski's motion for a new trial under Fed. R. Crim. P. 33.

## V.

Finally, Zgrzepski contends his sentence is unreasonable. He acknowledges that the District Court accurately calculated the recommended range under the Sentencing Guidelines, that he does in fact qualify as a career offender under U.S.S.G. § 4B1.1, and that the District Court properly considered each of the 18 U.S.C. § 3553(a) factors when determining his sentence. Nevertheless, Zgrzepski argues that his role in the robbery cannot justify the sentence imposed by the District Court.[8]

---

[8]Zgrzepski's argument is threefold: First, he contends it is unfair to punish an aider

(continued...)

13

We review the District Court's sentence for both procedural and substantive reasonableness. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). We look to whether the District Court has meaningfully considered the factors set forth under 18 U.S.C. § 3553(a), and then premised the defendant's sentence upon its consideration of those factors. *United States v. Lessner*, 498 F.3d 185, 203-04 (3d Cir. 2007). When the defendant's sentence falls within the accurately calculated Guidelines range, we may presume his sentence is reasonable. *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007).

The District Court accurately calculated Zgrzepski's recommended Guidelines range, and premised his sentence on its "judicious consideration" of the § 3553(a) factors. *Lessner*, 498 F.3d at 204. Zgrzepski's lengthy criminal record, his anti-social behavior, and his complete lack of remorse and appreciation for the gravity of his crime convinced the District Court that confining Zgrzepski for 220 months was an appropriate means of protecting society and promoting the interests of justice. We find no error in this decision.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

---

[8](...continued)
and abettor as if he were the principal; second, he argues that the § 4B1.1 career offender statute itself is unreasonable; and third, he requests the court mitigate his sentence in light of the hardship it will impose on his family. We agree with the District Court's resolution of these matters and will affirm.

14