**Affirmed and Memorandum Opinion filed August 13, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00338-CV

---

### ASHLEY COE, Appellant

### V.

### SIENNA FINANCIAL SERVICES, LLC, Appellee

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-18655**

---

### MEMORANDUM OPINION

After Sienna Financial Services, LLC, fired Ashley Coe, she sued the company for wrongful termination under the *Sabine Pilot* exception to the employment-at-will doctrine.[1] A jury returned a verdict for Coe and awarded damages; the trial court granted Sienna Financial's motion for judgment notwithstanding the verdict and Coe timely appealed. We affirm.

---

[1] *See Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

## BACKGROUND

Our recitation of the factual background is constrained by the appellate record before us. We draw the following from the limited record.

In September 2016, Coe saw an advertisement on Craigslist for "tax-preparer school" and decided to attend. After finishing the ten-week course, she applied for a job at Sienna Financial (owned by Kutina Harmon and Craig Bryant), and was hired to prepare tax returns in December 2016. Coe signed an at-will employment contract with Sienna Financial. She was assigned a Preparer Tax Identification Number (PTIN) which identified her to the Internal Revenue Service (IRS) and was required on every tax return she prepared. Between the time she was hired in December 2016 and the end of January 2017, business was slow and Coe mostly answered the phone; during that time, she prepared fewer than ten tax returns. According to Coe, she never received any complaints from Harmon or Bryant about her work performance during that time.

In the early evening on February 1, 2017, a customer came to Sienna Financial, introduced himself as the dentist next-door, handed Coe a large envelope, and asked her to "get this all worked up for" him so he could return the following day with his wife to "sign everything." Coe asked him to sign a release before he left. Coe recalled she and Bryant had the following exchange after the customer left:

> Craig [Bryant] came from the back and he was, like, why did you let him leave?
>
> And I said, well, he said he wanted to come back tomorrow with his wife to sign everything and that he had to get back to work. And he just wanted to drop it off so it could be worked up.
>
> And he's, like, no, no, no. You should have never let him walk out the door.

I was, like, okay. I was, like, but he wanted his wife here to go over everything.

And then Craig told me, he was, like, no, he didn't need his wife here.

I was, like, she has to be here to sign.

He goes, no, he can sign for his wife. And me and the other lady that was in the office kind of looked at each other and were just really puzzled.

And I was, like, you know, you can't sign for your wife.

And he told me, yes, that's one of the perks of being married is that you can sign things for your spouse.

And I was very confused and I was, like, I really don't think that's the way it is. We just learned about this in school; so I was, like, you know, how can that happen.

He was, like, it just is. You have him sign it and it's done.

After this exchange with Bryant, Coe and a co-worker looked up the circumstances in which a spouse can sign a tax return for the other spouse on the IRS website. Coe then told Bryant that a spouse can only sign for his or her spouse: "if you have a power of attorney, you know, special circumstances. Like if they're in the military or sick or if they've passed away in the previous tax year. That would be the only reason and you would need it documented." Bryant did not say anything to Coe in response.

Coe was scheduled to work the next afternoon. Because she was upset about the exchange she had with Bryant, she decided to send an email to Bryant and Harmon before coming to work the next morning. In her email, Coe expressed discomfort with "bending the rules" and stated, among others:

Craig,

First, I have to say that I am very happy and proud to be working for Liberty. I enjoy my time working with and helping people get the most; not only from their refund, but also from their experience of

having their taxes filed at Liberty.

I hope that I can be an asset to your team, and I am eager to learn the ins and outs of the business . . . .  And, while I know little about the business end of things that you see and handle everyday [sic], I do have a working understanding of laws.  Where you may feel comfortable bending the rules, it makes me very uncomfortable.  In the case of having a husband sign a return for his wife, the law is quite clear that there are only specific circumstances where this is allowed, and they have to be documented as such.  Doing so outside of those parameters is forgery and falsifying government documents and can carry criminal charges.  I just cannot, in good conscience, associated [sic] my name with that. . . .  And, while I will always do my best to bring in business, and give the best service possible to every client, I am very uncomfortable [ignoring] the laws to do so and I hope that it is not a condition of my continued employment.

Shortly thereafter, Harmon responded to Coe's email and fired her via email:

Ashley,

We at Liberty Tax Service are very happy to have you as a part of our team and think that you have a very bright future.

In no way would we at Liberty Tax Service ever ask you to perform any task that is illegal, unethical or breaks any government regulatory laws.  However, it is our expectation that staff consults with Liberty Management prior to interpreting tax laws based upon a novice understanding.  Management's intervention gives us an opportunity to assess the circumstances, review the law and to make a conscious and legal decision about what direction to pursue after prudent research.  It is our goal to create "Raving Liberty Tax Customers" by going the extra mile to make certain that all efforts to provide excellent customer service have been exhausted.

It is our apology if you interpreted things in any other way.  We thank you for your service to Liberty Tax and wish you the very best of luck on [sic] your future endeavors.

After hearing the evidence presented by the parties, the jury found in favor of Coe on her wrongful termination claim, answering "Yes" in response to Question Number 1 asking:  "Was Ashley Coe discharged for the sole reason that she

refused to perform an illegal act?" The jury also awarded Coe $4,350.00 in damages.

Sienna Financial filed a motion for judgment notwithstanding the verdict and argued that (1) "the evidence conclusively negated that [Sienna Financial] ordered or required [Coe] to perform an illegal act" or face termination; (2) "[a]t best, [Coe] provided evidence to a theoretical illegal act or a future illegal act for which *Sabine Pilot* is inapplicable"; and (3) no evidence supports the jury's damages finding because Coe "presented no facts or data to support [the] award of past lost earnings."

Coe filed a response to Sienna Financial's motion for judgment notwithstanding the verdict and contended (1) there is more than a scintilla of evidence to support a finding that she was fired solely for refusing to commit an illegal act because "[i]t can be reasonably inferred that, as a policy and practice of the company, there was an expectation that Coe engage in such illegal activity as a condition of continued employment"; and (2) there is sufficient evidence to support Coe's damages award.

The trial court granted Sienna Financial's motion for judgment notwithstanding the verdict and signed a take nothing judgment against Coe on April 18, 2018.

**ANALYSIS**

In one issue, Coe argues the trial court erroneously granted a judgment notwithstanding the verdict "after the jury found Sienna wrongfully terminated Coe under the *Sabine Pilot* doctrine" because (1) there is some evidence to support the jury's finding she "explicitly refused to commit an illegal act" and was fired solely for refusing to commit an illegal act; and (2) there is some evidence to

5

support the jury's damages award.

A trial court's decision to grant a judgment notwithstanding the verdict should be affirmed if there is no evidence to support one or more of the jury findings on issues necessary to liability. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam). To determine whether a trial court erred in granting a judgment notwithstanding the verdict, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review. *See id.*; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review.").

Thus, we will affirm a judgment notwithstanding the verdict if (1) there is a complete absence of evidence of a vital fact; (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Elaazami v. Lawler Foods, Ltd.*, No. 14-11-00120-CV, 2012 WL 376687, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2012, no pet.) (mem. op.); *see also City of Keller*, 168 S.W.3d at 820.

We must review the evidence in the light most favorable to the verdict and assume that the jury resolved all conflicts in accordance with the verdict. *City of Keller*, 168 S.W.3d at 820. We credit evidence favorable to the jury's verdict if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not do so. *Id.* at 827. Thus, if the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id.* at 822. The final test is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

In this case, Coe challenges the trial court's grant of judgment notwithstanding the verdict. However, an appellant bears the burden of bringing forward a sufficient record to show that the trial court erred. *See Sportscapers Constr., Inc. v. Mitchell*, No. 01-17-00432-CV, 2018 WL 3651620, at *3 (Tex. App.—Houston [1st Dist.] Aug. 2, 2018, no pet.) (mem. op.).

When an appellant requests a partial reporter's record, she must include with that request "a statement of the points or issues to be presented on appeal and [the appellant] will then be limited to those points or issues." *See* Tex. R. App. P. 34.6(c)(1); *Mason v. Our Lady of the Sea Catholic Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "The appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues." Tex. R. App. P. 34.6(c)(4); *Mason*, 154 S.W.3d at 819. This presumption applies even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue. Tex. R. App. P. 34.6(c)(4); *Mitchell*, 2018 WL 3651620, at *3.

Thus, if an appellant provides a partial reporter's record without including the required statement of points or issues, we must presume the omitted portions of the reporter's record support the trial court's findings. *Bennett v. Cochran*, 96 S.W.3d 227, 229-30 (Tex. 2002) (per curiam) ("There is no question that, had [appellant] completely failed to submit his statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's judgment."); *Gallagher v. Fire Ins. Exch.*, 950 S.W.2d 370, 371 (Tex. 1997) (per curiam) (quoting *Crown Life Ins. Co. v. Estate of Gonzalez*, 820 S.W.2d 121, 122 (Tex. 1991)) (per curiam) ("The court of appeals was correct in holding that, absent a complete record on appeal, it must presume the omitted [items] supported the trial court's judgment");

*Mason*, 154 S.W.3d at 819.

To prevail on her wrongful termination claim under the *Sabine Pilot* exception to the employment-at-will doctrine, Coe was required to prove that (1) she refused to perform an illegal act, and (2) this refusal was the only reason she was terminated. *See Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). The Texas Supreme Court recognized this narrow exception to the employment-at-will doctrine because of the public policies expressed in our criminal laws and to prevent employers from forcing employees "to choose between risking criminal liability and being discharged from [their] livelihood." *See Safeshred, Inc.*, 365 S.W.3d at 659; *Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.3d 723, 724 (Tex. 1990). Thus, the illegal act an employee is ordered to perform must be one that subjects the employee to criminal penalty. *See Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006) (per curiam) ("*Sabine Pilot* protects employees who are asked to commit a crime"); *see also Mayfield v. Lockheed Eng'g & Scis. Co.*, 970 S.W.2d 185, 187 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("To prevail on the *Sabine Pilot* exception to the employment-at-will doctrine, the terminated employee must prove his discharge was solely because he refused to perform an illegal act that could result in criminal penalties against him."); and *Medina v. Lanabi Inc.*, 855 S.W.2d 161, 163 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("Appellants do not dispute that under *Sabine Pilot* the illegal act they were required to perform as a condition of continued employment must be punishable as a crime.").

The reporter's record before us consists of a solitary volume containing excerpts from Coe's and Harmon's trial testimony. We do not know if the excerpts contain Coe's and Harmon's entire testimony. The reporter's record does not

8

contain any testimony from Bryant or any of the admitted trial exhibits.

The partial record in this case does not contain any evidence that the act Coe was asked to perform "could result in criminal penalties against" her as required by *Sabine Pilot*. *See D'Unger*, 207 S.W.3d at 332 ("*Sabine Pilot* protects employees who are asked to commit a crime"); *Mayfield*, 970 S.W.2d at 187 ("To prevail on the *Sabine Pilot* exception to the employment-at-will doctrine, the terminated employee must prove his discharge was solely because he refused to perform an illegal act that could result in criminal penalties against him."); *Ran Ken, Inc. v. Schlapper*, 963 S.W.2d 102, 105 (Tex. App.—Austin 1998, pet. denied) ("Necessary to the employee's proof is evidence that the act could have resulted in criminal penalties against the employee.").

However, regardless of the evidence presented in the partial record, this record before us neither contains a request for a partial reporter's record nor a statement of points or issues to be presented on appeal.[2] Thus, we must presume that the omitted portions of the reporter's record support the trial court's judgment. *See* Tex. R. App. P. 34.6(c)(4); *Bennett*, 96 S.W.3d at 229; *Gallagher*, 950 S.W.2d at 371; *Mitchell*, 2018 WL 3651620, at *3-4; *Mason*, 154 S.W.3d at 819-21; *Spring Ctr. Animal Clinic, Inc. v. Haltner & Assocs., Inc*. No. 14-01-00278-CV, 2002 WL 27431, at *2 (Tex. App.—Houston [14th Dist.] Jan. 10, 2002, no pet.) (mem. op., not designated for publication). Accordingly, we must conclude Coe

---

[2] The Harris County District Clerk has certified that Coe did not file a request for a partial reporter's record or a statement of points or issues to be presented on appeal. Additionally, in response to our July 8, 2019 order directing the Harris County District Clerk to file "any request for a reporter's record, including any statement of points or issues under Rule 34.6(c)," or certify that "the item is not a part of the case file," Coe filed a notice in this court on July 10, 2019, stating: "On July 8, 2019, the Court issued an order indicating that there was no request for a reporter's record. Appellant provides notice that, given the scope of this appeal and the fact that the relevant portions of the trial testimony were included in the clerk's record, there is no need for the reporter's record."

has not shown the trial court erred in granting a judgment notwithstanding the verdict in favor of Sienna Financial, and we overrule Coe's issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/    Meagan Hassan
Justice


Panel consists of Justices Christopher, Hassan, and Poissant.